Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| JOSÉ A. SANTANA FÉLIX<br><br>Peticionario<br><br>v.<br><br>MIRIAM VARGAS RIVERA Y OTROS<br><br>Recurrida | KLCE202500368 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Sobre: Acción Rescisoria; Incumplimiento de Contrato; Daños y Perjuicios<br><br>Caso Núm. MZ2021CV00543 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Domínguez Irizarry, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de abril de 2025.

Comparece ante nos, el peticionario, José Rodrigo Carreras Huertas, solicitando que dejemos sin efecto la determinación emitida por el Tribunal de Primera Instancia, Sala de Mayagüez, el 24 de febrero de 2025, notificada el mismo día. Mediante la misma, se le ordenó al peticionario a pagar la deuda de contribución del solar descrito como JS-11, ante el Centro de Recaudación de Ingresos Municipales (CRIM).

Por los fundamentos que exponemos a continuación, expedimos el auto de *certiorari* y revocamos el dictamen recurrido.

**I**

El 28 de abril de 2021, el señor Gerardo Santana Félix presentó la *Demanda* de epígrafe. En la misma, alegó que el 27 de enero de 2006, le compró un solar con una cabida de 310.5 metros cuadrados en el municipio de Toa Baja, a los señores José Rodrigo Carreras Huertas y su esposa, Miriam Vargas Rivera. En el pliego indicó que la propiedad fue presentada para inscripción en el

Número Identificador

SEN2025 _____

Registro de la Propiedad. No obstante, le fueron notificados múltiples defectos para la inscripción. Entre ellos, la existencia de una condición *sine qua con* para la inscripción de cualquier venta posterior a la segregación, la cual consistía en que los solares tenían que ser agrupados a cualquiera de los colindantes inmediatos.

Por lo antes expuesto, el señor Santana Félix solicitó la resolución del contrato, la restitución del precio pagado de cuarenta mil dólares ($40,000.00), el reembolso de gastos ascendentes a cinco mil dólares ($5,000.00), la indemnización de daños por angustias mentales por veinte y cinco mil dólares ($25,000.00), y la cantidad de cinco mil dólares ($5,000.00) como adjudicación de costas, gastos y honorarios de abogado, así como los intereses correspondientes.

En respuesta, el 6 de julio de 2021, los señores Carreras Huertas, Vargas Rivera y su Sociedad Legal de Gananciales presentaron una *Contestación a la Demanda*, en la cual negaron las alegaciones vertidas y alegaron que el recurrido conocía la condición registral existente, amparándose en el principio de publicidad registral. Posteriormente, se sustituyó a la parte demandante, el señor Gerardo Santana Félix por José A. Santana Félix (recurrido) y se eliminó del pleito a la codemandada, señora Vargas Rivera, ambos por causa de fallecimiento.

Transcurridos varios trámites procesales innecesarios de pormenorizar, el 3 de septiembre de 2024, las partes presentaron una *Moción Conjunta sobre Acuerdo Transaccional y para que se Dicte Sentencia por Estipulación* ante el Tribunal de Primera Instancia, informando haber alcanzado un acuerdo transaccional. Como parte del referido escrito, el peticionario renunció a cualquier interés sobre el siguiente inmueble:

> **RÚSTICA:** Urbanización Levittown de Toa Baja. Solar JS-11. Cabida: 710.315 metros cuadrados. Radicada en la Sección Séptima de Levittown, Barrio Sabana Seca, Municipio de Toa Baja, Puerto Rico, en lindes: al NORTE, en 23.00 metros con el solar número 10; al

SUR, en 35.15 metros con el Río Bayamón; al ESTE, en 46.78 metros con los solares E, 13, 14 y 15; y al OESTE, en 20.20 metros con la Calle Asunción Bobadilla y terrenos de la finca principal de la cual se segrega.

Igualmente, entre las estipulaciones, se pactó que, en un término perentorio de sesenta (60) días, el peticionario llevaría a cabo el trámite de entrega de la Carta de Relevo de Gravamen Hereditario ante el Departamento de Hacienda, incluyendo la instancia registral ante el Registro de la Propiedad. A su vez, entre otras cosas, en el inciso (h) del referido escrito se estableció que, "[l]as deudas por concepto de contribuciones sobre la propiedad, si alguna, se[rían] por cuenta de los demandados, quienes debe[rían] certificar que fueron totalmente satisfechas". El incumplimiento con lo acordado conllevaría la imposición de una penalidad de cinco mil dólares ($5,000.00) a favor del recurrido. Así, las partes le solicitaron al foro de primera instancia que tomase conocimiento de lo acordado y dictara sentencia por estipulación.

Ahora bien, a la *Moción Conjunta sobre Acuerdo Transaccional y para que se Dicte Sentencia por Estipulación*, se anejó una declaración jurada suscrita por el peticionario, en la cual, declaró bajo juramento que: Estoy consciente que seré responsable únicamente de las contribuciones de la propiedad del solar JS-12 de la Calle Asunción Bobadillo de la Urbanización Levittown, hasta que se firmen las escrituras correspondientes o se emita el mandato correspondiente por el Tribunal al Registrador de la Propiedad.

A pesar de tal disonancia, el 9 de septiembre de 2024, el Tribunal de Primera Instancia declaró *Ha Lugar* la solicitud de las partes y dictó *Sentencia por Estipulación.* En la misma, se acogieron los acuerdos realizados en la *Moción Conjunta sobre Acuerdo Transaccional y para que se Dicte Sentencia por Estipulación.*

Posteriormente, el 11 de noviembre de 2024, la parte recurrida presentó una *Moción de Sanciones; Imposición de*

*Penalidad Estipulada y Vista de Desacato*, mediante la cual sostuvo que la parte peticionaria había incumplido con las disposiciones pactadas en el acuerdo transaccional. En particular, alegó que no se había cumplido con el trámite de entrega de la Carta de Relevo de Gravamen Hereditario ante el Departamento de Hacienda, incluyendo la instancia registral ante el Registro de la Propiedad, ni con el pago de las contribuciones adeudadas sobre la propiedad ante el CRIM. Por lo cual, solicitó la imposición de la penalidad estipulada de cinco mil dólares ($5,000.00) y **la celebración de una vista de desacato.**

El 20 de noviembre de 2024, el peticionario presentó una *Oposición a Solicitud de Desacato*, en la cual adujo haber presentado los documentos ante las agencias correspondientes. Anejó el recibo de la presentación de la Carta de Relevo de Gravamen Hereditario ante el Departamento de Hacienda, incluyendo la instancia registral ante el Registro de la Propiedad, según lo acordado.

En respuesta, el 21 de noviembre de 2024, la parte recurrida incoó una *Réplica a Oposición a Moción de Sanciones; Imposición de Penalidad Estipulada y Vista de Desacato; y Reiterando Fuertes Sanciones*, donde reconoció el cumplimiento de la presentación de la Carta de Relevo de Gravamen Hereditario ante el Departamento de Hacienda, así como la instancia registral ante el Registro de la Propiedad. No obstante, adujo que no se desprendía de la referida moción evidencia de pago de la deuda de las contribuciones ante el CRIM. Por ello, solicitó la imposición de la penalidad estipulada de cinco mil dólares ($5,000.00) y **la celebración de una vista de desacato**.

El 9 de diciembre de 2024, el Tribunal de Primera Instancia le ordenó a la parte peticionaria que presentara la evidencia de los pagos de contribución sobre la propiedad ante el CRIM y le concedió un término de diez (10) días para ello.

En atención a lo ordenado, el 18 de diciembre de 2024, el peticionario presentó una *Moción en Cumplimiento de Orden*, a la cual anejó un estado de cuenta y un recibo de pago emitido por el CRIM, del cual surgía que la propiedad descrita como JS-12 no tenía deudas. A su vez, anejó la declaración jurada que había sido presentada ante el foro de primera instancia como anejo al acuerdo de transacción.

El 17 de enero de 2025, la parte recurrida incoó una *Oposición a Moción en Cumplimiento de Orden sobre Saldo de Deuda con el CRIM; y Solicitud de Remedios*. En la misma, arguyó que contrató los servicios de la señora Gloria Hernández, gestora del CRIM, quien investigó y les informó que solo se había pagado la deuda del solar con una cabida de 459.8 metros cuadrados. A su vez, anejó estados de cuentas del CRIM, en los cuales se demostraba una deuda de $4,444.85 en el solar que había sido objeto de compraventa en el año 2006, con cabida de 310.5 metros cuadrados. Por ello, planteó que el peticionario había incumplido con el acuerdo transaccional y solicitó las reiteradas súplicas.

El 18 de febrero de 2025, la parte recurrida presentó una *Solicitud de Remedios Urgentes*, en la cual reiteró sus planteamientos. En respuesta, ese mismo día, el peticionario presentó la *Oposición a Segunda Solicitud de Desacato* y destacó que en la declaración jurada se disponía claramente que su responsabilidad se limitaba al pago de las contribuciones sobre el predio que figuraba a su nombre ante el CRIM, el cual tenía la cabida de 459.8 metros cuadrados. Por consiguiente, solicitó que se declarara No Ha Lugar la solicitud de la parte recurrida.

El 20 de febrero de 2025, la parte recurrida incoó una *Réplica a Oposición a Segunda Solicitud de Desacato*, en la cual alegó que el peticionario fundamentó su oposición en una declaración jurada *ex parte*, pretendiendo con ello, variar los términos y condiciones

suscritos entre las partes. Planteó que el foro de primera instancia no debía tomar en consideración la referida declaración jurada y que los acuerdos válidos eran aquellos que se habían presentado ante el Tribunal.

Examinados los escritos presentados por las partes, el 24 de febrero de 2025, el Tribunal de Primera Instancia emitió la *Resolución y Orden* recurrida. En la misma, se hizo alusión a las estipulaciones, específicamente al inciso (h) que establece que, "[l]as deudas por concepto de contribuciones sobre la propiedad, si alguna, serán por cuenta de los demandados, quienes deberán certificar que fueron totalmente satisfechas". Consecuentemente, se le ordenó al peticionario a emitir el pago de las contribuciones correspondientes al solar con una cabida de 710.3 metros cuadrados ante el CRIM, en un término de diez (10) días. De incumplir, se le apercibió que conllevaría sanciones económicas severas y desacato.

En desacuerdo, el 6 de marzo de 2025, el peticionario presentó una *Solicitud de Reconsideración*, en la que sostuvo que, según se desprendía de su declaración jurada, su obligación se limitaba expresamente al pago de las contribuciones relativas al solar descrito con una cabida de 459.8 metros cuadrados.

El 7 de marzo de 2025, la parte recurrida presentó la *Oposición a Moción de Reconsideración de la Parte Demandada; y Solicitando Reconsideración por la Parte Demandante*, reiterando que el peticionario estaba obligado a la deuda contributiva conforme al acuerdo.

Habiéndose analizado los respectivos planteamientos de las partes, el 7 de marzo de 2025, con notificación el 10 de marzo de 2025, el Tribunal de Primera Instancia declaró *No Ha Lugar* la *Solicitud de Reconsideración* presentada por la parte peticionaria.

Inconforme, el 9 de abril de 2025, la parte peticionaria compareció ante nos mediante el presente recurso de *certiorari*. En igual fecha, presentó una *Moción en Auxilio de Jurisdicción,* respecto a la cual, mediante *Resolución* del 10 de abril de 2025, ordenamos la paralización de los procedimientos en el Tribunal de Primera Instancia.

En su recurso, la parte peticionaria formuló el siguiente planteamiento de error:

> Erró el Tribunal de Primera Instancia al determinar que el peticionario venía obligado al pago de las contribuciones de la propiedad del solar 11J que le había sido vendido a la parte recurrida y que al momento de suscribir el acuerdo no se incluyó la existencia de contribuciones adeudada[s]; y a pesar de que al momento de perfeccionarse el contrato de transacción el compareciente expresamente dispuso que sería solo responsable de las contribuciones del solar 12J con número de catastro 039-094-356-01-000, lo cual tiene el efecto de variar la transacción entre las partes.

Luego de examinar el expediente de autos y sin contar con la comparecencia de la parte recurrida por no presentar su oposición en el término reglamentario, procedemos a expresarnos.

## II

El Artículo 1230 del Código Civil de Puerto Rico, 31 LPRA sec. 9751, dispone que el contrato es el negocio jurídico bilateral en virtud del cual dos o más partes expresan su consentimiento en la forma prevista por ley para crear, regular, modificar o extinguir sus obligaciones. Así, el estado de derecho reconoce que existe un contrato desde que dos o más personas consienten a obligarse entre sí a dar alguna cosa o a prestar algún servicio. *Cruz, López v. Casa Bella y otros,* 213 DPR 980, 995 (2024). Lo anterior resulta del principio de la autonomía de la voluntad, cuya esencia radica en otorgar un amplio margen de libertad de acción a los particulares que desean obligarse, siempre que sus acuerdos sean cónsonos con la ley, la moral y el orden público. 31 LPRA sec. 9753. Las

obligaciones derivadas de los contratos tienen fuerza de ley entre las partes. 31 LPRA sec. 9754. *Cruz, López v. Casa Bella y otros,* supra, pág. 994. La existencia de un contrato está sujeta a la necesaria concurrencia de los requisitos de consentimiento, objeto cierto y causa de la obligación que se establezca. 31 LPRA sec. 9771. Así, una vez perfeccionado, el mismo es obligatorio cualquiera que sea la forma en la que se haya celebrado, siempre que en él se hagan presentes las condiciones esenciales para su validez. 31 LPRA sec. 9753.

Ahora bien, en lo pertinente a la controversia ante nos, el Art. 1497 del Código Civil, 31 LPRA sec. 10641, define el contrato de transacción como "mediante concesiones recíprocas, las partes ponen fin a un litigio o a su incertidumbre sobre una relación jurídica". Es preciso destacar que el contrato de transacción tiene los mismos requisitos que se establecen en el Código Civil de Puerto Rico para la validez de los contratos. *López Tristani v. Maldonado,* 168 DPR 838, 846-847 (2006). Esto es, para que exista este tipo de contrato deben concurrir los elementos siguientes: el consentimiento de las partes sobre el objeto y la causa. 31 LPRA sec. 9771.

Asimismo, se ha determinado que, al interpretar un contrato de transacción, son de aplicación las normas generales sobre interpretación de contratos, siempre y cuando no sean incompatibles con el acuerdo entre las partes. Particularmente, aquellas que tratan sobre la necesidad de descubrir la verdadera intención de los contratantes cuando ésta no surge claramente de los términos del contrato. *Demeter Int'l v. Srio. Hacienda,* 199 DPR 706, 727 (2018); *Fonseca et al. v. Hosp. HIMA,* 184 DPR 281, 291 (2012). Por lo cual cuando surge la necesidad de descubrir la verdadera intención de los contratantes es necesario considerar sus actos coetáneos y posteriores al otorgamiento del contrato. 31 LPRA

sec. 6342; *Cruz, López v. Casa Bella y otros*, supra, págs. 995-996. Por último, el acuerdo de transacción se interpretará restrictivamente. 31 LPRA sec. 10643.

**III**

En su recurso, la parte peticionaria plantea, en esencia, que erró el Tribunal de Primera Instancia al determinar que venía obligado al pago de las contribuciones del solar con una cabida de 710.3 metros cuadrados, a pesar de que en la declaración jurada sometida dispuso que sería solo responsable de las contribuciones del solar con una cabida de 459.8. metros cuadrados.

Un examen del expediente que nos ocupa nos lleva a concluir que el Tribunal de Primera Instancia erró al adjudicar la controversia sin antes resolver la verdadera intención de las partes, en relación con el pago de las contribuciones sobre el solar en controversia. De hecho, la parte recurrida reconoció en varias ocasiones durante el proceso, la necesidad de una vista para dirimir la solicitud de desacato. Nos explicamos.

Surge del récord que las partes presentaron una *Moción Conjunta sobre Acuerdo Transaccional y para que se Dicte Sentencia por Estipulación*, en la cual, la parte peticionaria renunció y adjudicó cualquier interés sobre el solar con una cabida de 710.3 metros cuadrados, a favor de los recurridos, para poner fin al pleito entre las partes. Al referido escrito se incorporó una declaración jurada suscrita por el peticionario, expresando su consentimiento y aprobación al mismo. No obstante, en cuanto al tema de las contribuciones, manifestó en su declaración jurada que "[...] seré responsable únicamente de las contribuciones de la propiedad del solar descrito como JS-12 [...]". Mientras que, por otro lado, la estipulación presentada en el Tribunal se dispuso que "las deudas por concepto de contribuciones sobre la propiedad, si alguna, serán

por cuenta de los demandados quienes deberán certificar que fueron totalmente satisfechas".

Esta inconsistencia ha dado paso a múltiples incidentes posteriores relacionados con el cumplimiento del acuerdo, particularmente sobre si el peticionario estaba obligado únicamente al pago de las contribuciones del solar dado en dación de pago, con cabida de 459.8 metros cuadrados, como él sostiene. No obstante, del expediente no se refleja que se haya celebrado vista alguna para esclarecer la intención real de las partes al momento de perfeccionar el contrato de transacción.

Cabe destacar que, en el presente caso, del recurso se desprende que, en el año 2006, el peticionario vendió un solar con una cabida de 310.5 metros cuadrados, el cual ha estado en posesión de los recurridos desde entonces. No obstante, dicho solar contaba con una condición registral que impedía su inscripción en el Registro de la Propiedad. Ante esa situación, las partes acordaron suscribir un acuerdo de transacción para finiquitar el pleito. Como parte de dicho acuerdo, el peticionario efectivamente otorgó a los recurridos el remanente del predio, con una cabida de 459.8 metros cuadrados. Sin embargo, la sentencia por estipulación describió erróneamente que se concedió, a modo de dación en pago, un solar con una cabida de 710.3 metros cuadrados.

Obsérvese que el solar objeto del contrato de compraventa ya figuraba a nombre de los recurridos, fue individualizado en los registros del CRIM, y mantiene deudas contributivas. Por otro lado, el remanente otorgado, con una cabida de 459.8 metros cuadrados, se encuentra libre de deudas contributivas. Esta circunstancia complica la determinación sobre en quién recae la obligación contributiva correspondiente. Por tanto, se hace indispensable examinar la verdadera intención de las partes en cuanto a la

distribución de dicha carga contributiva en el acuerdo transaccional.

Nuestro ordenamiento jurídico reconoce que, ante la existencia de ambigüedades o contradicciones en los términos contractuales, corresponde al Tribunal armonizar la letra del contrato con la verdadera intención de los contratantes. A tales efectos, se debe considerar la conducta de las partes, tanto anterior como posterior a la formalización del contrato, conforme dispone el Artículo 354 del Código Civil de Puerto Rico, 31 LPRA § 6342.

En vista de la ausencia de una determinación clara sobre la intención común de las partes en relación con el pago de las contribuciones, y ante la falta de la descripción correcta de lo que se otorgó en la dación en pago, este Foro ordena al Tribunal de Primera Instancia la celebración de una vista evidenciaría. La misma deberá dirigirse a esclarecer la intención de los contratantes al momento de suscribir el acuerdo, garantizando así la protección del debido proceso de ley de las partes.

**IV**

Por los fundamentos que nos anteceden, expedimos el auto de *certiorari* y revocamos el dictamen recurrido. Se ordena la celebración de una vista para dirimir la intención del contrato de transacción respecto al pago de las contribuciones en controversia. En consecuencia, se deja sin efecto la paralización de los procesos decretada por este Foro mediante *Resolución* del 10 de abril de 2025 y se ordena la continuación de los mismos, a tenor con lo aquí dispuesto.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones